IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| Michael L. Squirewell, a/k/a Squirewell's Builders, Inc., | C/A No.: 3:10-cv-1902-JFA |
| Plaintiff, | |
| vs. | **ORDER GRANTING SUMMARY JUDGMENT** |
| South Carolina Department of Labor, Licensing and Regulation, and Stanley Bowen, Charles Ido, Stephen Deer and Jerry Merritt, in their official and individual capacities, | |
| Defendants. | |

This matter comes before the Court pursuant to the defendants' motion for summary judgment (ECF No. 77). The Court held a hearing on October 6, 2011. After considering the written materials submitted and the arguments of counsel, the Court grants the defendants' motion for summary judgment.

### I. FACTUAL AND PROCEDURAL BACKGROUND

Michael Squirewell worked as a residential home builder from 1994 until 2008. He is the founder, owner, and operator of Squirewell's Builders, Inc. The defendant S.C. Department of Labor, Licensing and Regulation (SCDLLR) is a South Carolina agency with authority over the Office of Investigation and Enforcement (OIE) and the Residential Builder's Commission (RBC). The OIE investigates complaints of alleged misconduct by licensees, and the RBC administers issues affecting licensing and standards for residential building. At the times relevant to this case, defendants Jerry

1

Merritt and Steven Deer were investigators at OIE, defendant Charles Ido was Chief of OIE, and defendant Bowen was the Administrator for the RBC.

This case arises from four complaints homeowners filed against Squirewell at the SCDLLR from November 2006 to July 2007. The complaints stemmed from various defects at the homes of individuals who had homes built by Squirewell. *See* Pl.'s Mem. Opp. Summ.J., Ex. 11, ECF No. 103-14. As a result of the complaints, SCDLLR began administrative action through its outside counsel Joseph Connell. The SCDLLR issued a complaint that notified Mr. Squirewell of a hearing scheduled for November 27, 2007. Defs.' Mem. Supp. Mot. Summ.J., Ex. 6, ECF No. 84-2. Squirewell came to SCDLLR that day with his counsel. Though the "Notice of Hearing" states that he had the right to present evidence and testimony, *see id.*, Ex. 7, ECF No. 84-2, and his attorney Heath Taylor was present, Squirewell was not prepared to present evidence or testimony, Pl.'s Mem. Opp. Summ.J. 8, ECF No. 103. Accordingly, his attorney advised him to sign a memorandum of agreement (MOA) for each of the complaints. These MOA admitted the allegations and waived his right to a formal evidentiary hearing before the RBC. Defs.' Mem. Supp. Mot. Summ.J, Exs. 10–12, ECF No. 88. After signing the MOA on November 27, 2007, an RBC hearing officer held a preliminary hearing. The RBC held a full hearing regarding the complaints outlined in the MOA on April 9, 2008 and ordered a $10,000 fine—the maximum amount—and revocation of Squirewell's license, but it provided him with a 45 day window to correct the defects outlined in the MOA. *Id.*, Ex. 15, ECF No. 88-6.

Squirewell did not correct the deficiencies within the 45 day period. He asserts that it was because he was not able to get clarification as to which specific items needed attention and because he did not have access to the houses. By letter dated July 24, 2008, Bowen revoked Squirewell's license. *Id.*, Ex. 20, ECF No. 89-5. Squirewell, through his attorney Heath Taylor, requested an appeal before the RBC. Plaintiff asserts that he was relying on the language in the Bowen letter in requesting the hearing. Pl.'s Mem. Opp. Summ.J. 25, ECF No. 103. The SCDLLR received this letter of request, but directed Squirewell that the proper method for taking an appeal was to file an appeal with the South Carolina Administrative Law Court (ALC). Defs.' Mem. Supp. Mot. Summ.J., Ex. 23, ECF No. 90-3. Squirewell did not file a direct appeal at that time.

Following the revocation of his license, the OIE again investigated Squirewell because it appeared that he was continuing to engage in residential home building. That investigation concluded that Squirewell was continuing to engage in the business of residential building. Squirewell argues that he was acting as an advisor or agent to homeowners building their own homes under agreements he labeled "Construction Management Contracts." *See id.*, Ex. 50, ECF No. 97-5. The OIE served an "Order to Cease and Desist" and issued three citations upon Squirewell's counsel.[1] Additionally, the SCDLLR filed a petition with the ALC to enjoin Squirewell from undertaking unlicensed building. Squirewell's new attorney, James Smith, moved to dismiss the petition. At a hearing on June 10, 2009, the ALC agreed with Squirewell that the prior revocation of his license without a hearing to determine whether he corrected the defects

---

[1] At this time, Glenn Walters represented Squirewell.

in the MOAs was improper. By order of Sept. 22, 2009, the ALC remanded the case to the RBC. *Id.*, Ex. 40, ECF No. 95-5. The ALC determined that it was a violation of due process to revoke Squirewell's license without holding a hearing to determine whether he remedied the deficiencies addressed in the MOA.

On remand, the RBC conducted a hearing to determine whether or not Squirewell complied with the MOA and fixed the deficiencies in the 45 day window. The RBC found that he failed to comply with the order, and suspended his license pending payment of a $10,000 fine. *Id.*, Ex. 42, ECF No. 96-2. Squirewell appealed this order to the ALC. By order of February 4, 2011, the ALC affirmed the findings but reduced the fine to $5000. *Id.*, Ex. 45, ECF 96-5. Squirewell subsequently paid the fine, and his license was reinstated.

Squirewell asserts three causes of action in his amended complaint: (1) violation of substantive and procedural due process under the 5th and 14th amendments to the U.S. Constitution, (2) defamation, and (3) malicious interference with contractual relations (ECF No. 62). Plaintiff brings the defamation and malicious interference with contractual relations claims as pendant state law claims. Defendants move for summary judgment on all of the claims.

## II.     LEGAL STANDARD

Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment shall be granted when a moving party has shown that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The court must determine whether the evidence presents a sufficient disagreement to

require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986). When evaluating a motion under Rule 56, the Court must construe all "facts and inferences to be drawn from the facts . . . in the light most favorable to the non-moving party," *Miller v. Leathers*, 913 F.2d 1085, 1087 (4th Cir. 1990) (internal quotations omitted), and summary judgment should be granted in those cases where it is perfectly clear that there remains no genuine dispute as to material fact and inquiry into the facts is unnecessary to clarify the application of the law. *McKinney v. Bd. of Trustees of Maryland Community College*, 955 F.2d 924, 928 (4th Cir. 1992). In deciding a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

### III. DISCUSSION

#### a. *Due Process Violations*

Squirewell contends that the defendants' actions outlined above deprived him of both procedural and substantive due process in violation of the U.S. Constitution.

##### i. Procedural Due Process

To sustain a procedural due process violation claim, a plaintiff "must demonstrate: (1) that it had a property interest; (2) of which the [state] deprived it; (3) without due process of law." *Tri-County Paving, Inc. v. Ashe County*, 281 F.3d 430, 436 (4th Cir. 2002) (citing *Sylvia Dev. Corp. v. Calvert County*, 48 F.3d 810, 826 (4th Cir. 1995)). "[T]o determine whether a procedural due process violation has occurred,

courts must consult the entire panoply of predeprivation and postdeprivation process provided by the state." *Id.* (citing *Fields v. Durham*, 909 F.2d 94, 97 (4th Cir. 1990)). In *Tri-County*, the court denied the procedural due process claim because the plaintiff "failed to take advantage of [the numerous postdeprivation remedies]." *Id.* at 438. Although "a temporary, nonfinal deprivation of property is nonetheless a 'deprivation' in the terms of the Fourteenth Amendment," *Fuentes v. Shevin*, 407 U.S. 67, 85 (1972), "procedural due process does not require certain results-it requires only fair and adequate procedural protections." *Tri-County*, 281 F.3d at 438.

The parties have stipulated that Squirewell's license constitutes a property interest and that the revocation of the license deprived him of that interest. The parties dispute the third prong of the test outlined in *Tri-County*—whether that deprivation was without due process.

After the initial letter revoking his license, Squirewell did not take an appeal with the ALC. Thus, although plaintiff asserts a denial of procedural due process, he did not take advantage of the existing procedures. As in *Tri-County*, this Court finds that plaintiff's failure to avail himself of the available postdeprivation procedures defeats his procedural due process claim. A party who fails to take advantage of available procedures at the time "cannot complain now that the state did not provide adequate procedures." *Tri-County*, 281 F.3d. at 438. Moreover, despite his failure to take a direct appeal, the ALC ultimately held a hearing to determine whether or not Squirewell remedied the deficiencies in the MOA within the 45 day window. The fact that the ALC disagreed with Squirewell is of no consequence because "procedural due process does

6

not require certain results—it requires only fair and adequate procedural protections." *Id.* at 436. Accordingly, the Court finds that the procedural due process claim fails as a matter of law.

### ii. Substantive Due Process

To establish a violation of substantive due process, a claimant must demonstrate: "(1) that [it] had property or a property interest; (2) that the state deprived [it] of this property or property interest; and (3) that the state's action falls so far beyond the outer limits of legitimate governmental action that no process could cure the deficiency." *Tri County*, 281 F.3d at 440 (citing *Sylvia*, 48 F.3d at 827). Substantive due process protections "run only to state action so arbitrary and irrational, so unjustified by any circumstance or governmental interest, as to be literally incapable of avoidance by any pre-deprivation procedural protections or of adequate rectification by any post-deprivation state remedies." *Id.* (citing *Rucker v. Harford County*, 946 F.2d 278, 281 (4th. Cir. 1991)).

In this case, Squirewell was able to avail himself of state procedures to cure the alleged deprivation after it occurred. Squirewell eventually argued at a hearing that he remedied conditions outlined in the MOA and that the license should not have been revoked after the 45 day period. Moreover, he eventually regained his license. These procedures demonstrate that the state's actions were not "beyond the outer limits of legitimate governmental action." *Id.* at 440. The procedures, in fact, provided "adequate rectification" for the initial improper procedures because he was ultimately provided the hearing he sought. As the Fourth Circuit noted in *Tri-County*, "the fact that

7

state courts are available to redress and correct violations of state law 'belies the existence of a substantive due process claim.'" *Id.* at 441 (citing *Sylvia*, 48 F.3d at 829). Accordingly, the Court finds that the substantive due process claim fails as a matter of law.

### b. *Defamation*

Squirewell contends that the defendant's defamed him on three general grounds: (1) by stating and insinuating that he was a poor builder, (2) by stating that he was acting as a "builder" in the later contracts after his license had been revoked, and (3) by stating that plaintiff was subject to possible criminal punishments. Defendants assert truth as a defense to each of these claims.

"In order to prove defamation, the plaintiff must show (1) a false and defamatory statement was made; (2) the unprivileged publication was made to a third party; (3) the publisher was at fault; and (4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication." *Argoe v. Three Rivers Behavioral Health, L.L.C.*, 392 S.C. 462, 474, 710 S.E.2d 67, 74 (2011). "The truth of the matter is a complete defense to an action based on defamation." *WeSav Fin. Corp. v. Lingefelt*, 316 S.C. 442, 445, 450 S.E.2d 580, 582 (1994) (per curiam) (citing *Ross v. Columbia Newspaper, Inc.*, 266 S.C. 75, 221 S.E.2d 770 (1976)).

The statute of limitations for a defamation cause of action in S.C. is two years, *see* S.C. Code § 15-3-550, and S.C. courts have "not adopted the discovery rule in libel and slander cases." *Jones v. City of Folly Beach*, 326 S.C. 360, 369, 483 S.E.2d 770, 775 (Ct. App. 1997). Plaintiff filed the claim on July 22, 2010; therefore, any statements made

8

prior to July 22, 2008 are time-barred. Because some of the claims arise from statements made after that date, the Court will address the substance of plaintiff's defamation claims.

The first claim, that plaintiff was a poor builder, stems from the SCDLLR investigations, findings, reports and the inferences drawn therefrom. For each of these complaints, Squirewell signed an MOA admitting the deficiencies. Because plaintiff admitted these facts, the defendants were entitled to investigate him and to revoke his license. The RBC ultimately held a hearing and determined that the revocation was proper. As such, truth provides a complete defense and the words and actions of the defendants during this process do not constitute defamation.

Squirewell's remaining defamation claims stem from his activities following the revocation of his license. Plaintiff entered into "Construction management contracts" prior to losing his license, and he continued to work under these contracts in an "advisory" role following the revocation of his license. Because they understood Squirewell to continue to act as a builder, the OIE advised the homeowners that Squirewell was violating the RBC because his license had been revoked. The definition of a builder for purposes of the RBC is as follows:

> "Residential builder" means one who constructs, superintends, or offers to construct or superintend the construction, repair, improvement, or reimprovement of a residential building or structure . . . . Anyone who engages or offers to engage in such undertaking in this State is considered to have engaged in the business of residential building."

S.C. Code Ann § 40-59-20(6) (2011). Though Squirewell argues that he acted as an agent rather than as a builder under these contracts, he clearly adopted a role within the definition of builder. The Construction Management Contracts provided that Squirewell

9

would "coordinate and supervise" the work at the residence. Defs.' Mem. Supp. Mot. Summ.J., Ex. 50, ECF No. 97-5. Squirewell signed loan documents with the banks representing that he was acting as the builder under these contracts. *Id.*, Ex. 55, ECF No. 99-3. In addition, a homeowner stated that Squirewell, not the homeowner, was the overseer of the project. *See* Emerson Dep. 15:19–16:11, ECF No. 99-5. Squirewell does not contest these facts and offers no evidence to prove that he was not acting as a builder. Accordingly, the Court finds that there is no genuine issue of material fact as to whether Squirewell was acting as a builder as defined by S.C. law. Because he was acting as builder, the defendants' did not defame him when they called him a builder. As such, Squirewell's defamation claim fails as a matter of law on this ground.

Finally, the S.C. law that the RBC cited in issuing the "Order to Cease and Desist" provides for criminal penalties. *See* S.C. Code Ann. § 40-59-200 (2011) (stating that violation of the section is a misdemeanor and can result in a fine or imprisonment). Because Squirewell continued to hold himself out as a builder, he violated this provision. Therefore, any statements by the defendants that Squirewell may be facing criminal penalties, including jail time, were true. As a result, Squirewell's final ground to support his defamation claims fails as a matter of law.

Because there is no genuine issue of material fact as to the truth of defendant's statements, plaintiff's defamation claims fail as a matter of law. *See Lingefelt*, 316 S.C. at 445, 450 S.E.2d at 582 (upholding a grant of summary judgment on defamation claims where "there was no question of fact as to the truth of [defendant's] statements").

Accordingly, this Court grants defendant's motion of summary judgment on plaintiff's defamation claims.

### c. *Malicious Interference with Contractual Relations*

"To establish a cause of action for tortious interference with contractual relations, a plaintiff must show: 1) the existence of a contract; 2) knowledge of the contract; 3) intentional procurement of its breach; 4) the absence of justification; and 5) resulting damages." *Eldeco, Inc. v. Charleston County School Dist.*, 372 S.C. 470, 480, 642 S.E.2d 726, 731 (2007) (citing *Kinard v. Crosby*, 315 S.C. 237, 240, 433 S.E.2d 835, 837 (1993)). "The right to recover for the unlawful interference with the performance of a contract presupposes the existence of a valid, enforceable contract." *Jackson v. Bi-Lo Stores, Inc.*, 313 S.C. 272, 277, 437 S.E.2d 168, 171 (Ct. App. 1993) "The general rule is that courts will not enforce a contract which is violative of public policy, statutory law, or provisions of the Constitution." *Carolina Care Plan, Inc. v. United HealthCare Services, Inc.*, 361 S.C. 544, 556–57, 606 S.E.2d 752, 758 (2004) (citing *Beach Co. v. Twillman, Ltd.*, 351 S.C. 56, 64, 566 S.E.2d 863, 866–67 (Ct. App. 2002)).

Plaintiff argues that he acted as an agent rather than as a builder under the later contracts, and therefore, the OIE investigators interfered with his contracts when they issued the "Order to Cease Desist." Initially, the Court notes that defendants were justified in investigating Squirewell's potential violation of the "Order to Cease and Desist." Also, as discussed above, the Court concludes as a matter of law that Squirewell was acting as builder. Because he was acting as a builder as defined by the statutes governing residential building, the contracts are unenforceable as against public policy

11

and do not form the basis for an interference with contractual relations claim. As a result, the Court finds that plaintiff's claim for malicious interference with contractual relations fails as a matter of law.

### IV.     CONCLUSION

For the reasons stated above, the Court finds that there are no genuine issues of material fact and grants the defendants' motion for summary judgment (ECF No. 77) on all of the plaintiff's claims.

IT IS SO ORDERED.

October 11, 2011                                                Joseph F. Anderson, Jr.
Columbia, South Carolina                                United States District Judge

12